IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION



WILHELMINA COTTEN,

    Plaintiff,

v.

MARY SCOTT NURSING HOME, INC.,

    Defendant.

Case No. 3:16-cv-492

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT MARY SCOTT NURSING HOME, INC. (DOC. #28); PLAINTIFF WILHELMINA COTTEN'S CLAIMS AGAINST DEFENDANT SHALL PROCEED TO TRIAL

---

Plaintiff Wilhelmina Cotten ("Plaintiff" or "Cotten"), a female former employee of Defendant Mary Scott Nursing Home, Inc. ("Defendant" or "MSNH"), alleges that Defendant unlawfully terminated her in retaliation for her complaining about being sexually harassed by one of Defendant's residents and Defendant's not taking steps to prevent harassment. Plaintiff claims that Defendant's unlawful retaliation violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.* (Claim One), and Ohio Rev. Code § 4112.01 *et seq.* (Claim Two). Doc. #1, ¶¶ 28-41, PAGEID #5-7. Defendant has filed a Motion for Summary Judgment on both claims. Doc. #28. For the reasons set forth below, Defendant's Motion is OVERRULED.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was hired by Defendant as an at-will employee as a State Tested Nursing Assistant ("STNA") in March 2015. Doc. #27, PAGEID #105, 169-70. Plaintiff later became a Social Service Assistant ("SSA"), a job which she performed well, and "MSNH never provided Ms. Cotton any type of write-up or documented verbal counseling prior to her termination." Doc. #35, PAGEID #479 (citing Doc. #27, PAGEID #126-27; Doc. #35-1, ¶ 27, PAGEID #502). As an SSA, Plaintiff was supervised by Samantha Clark ("Clark"), and also continued to be supervised by Saundra Roundtree ("Roundtree"), her former supervisor, since "she could still possibly perform STNA duties[.]" Doc. #28, PAGEID #220 (citing Doc. #28-2, ¶ 4, PAGEID #246; Doc. #28-3, ¶ 5, PAGEID #251).

One of Plaintiff's duties as an SSA was to supervise residents of MSNH during their legally-guaranteed smoking breaks, which occurred at regular intervals throughout the day. Dondi Myers ("Myers"), Defendant's Unit Manager, was responsible for creating the schedule for when certain employees are to take certain residents on their smoke breaks. Doc. #28, PAGEID #220-21 (citing Doc. #28-1, ¶¶ 6-7, PAGEID #241). On July 17, 2015, Plaintiff, without another staff member accompanying her, took several residents outside for a smoke break, during which she was sexually harassed by a Jerald Simon ("Simon"), one of Defendant's mentally disabled residents. Doc. #27, PAGEID #143; Doc. #28-1, ¶¶ 10, 13, PAGEID #242, 243. Plaintiff reported the harassment to Myers, who laughed and stated, "well, he's human, he's a man." Doc. #35, PAGID #479 (alterations removed) (quoting Doc. #27, PAGEID #147). Nonetheless, Myers ordered Plaintiff not to interact with Simon. Doc. #28-1, ¶ 10,

2

PAGEID #242. Plaintiff called Steve Dunson ("Dunson"), MSNH's administrator at the time, to report Simon's harassment and what she felt were Myers's inadequate responses. Dunson informed Plaintiff that, if Simon harassed her again, he would be removed from the facility. Doc. #35, PAGEID #480 (citing Doc. #35-1, ¶ 6, PAGEID #499).[1] Defendant subsequently altered Simon's Care Plan so that Plaintiff would never be responsible for taking Simon out for smoke breaks. Doc. #35-1, ¶7 PAGEID #499. Further, at Plaintiff's suggestion, a policy was implemented that required two staff members to accompany residents on every smoke break. Doc. #27, PAGEID #137-38. However, Plaintiff claims that Myers took no steps to effectuate the two-employee policy, and, consequently, Plaintiff took residents out for smoke breaks without being accompanied by another staff member. Doc. #28-1, ¶ 17, PAGEID #244; Doc. #35-1, ¶ 8, PAGEID #499.

On or about August 25, 2015, Plaintiff, without another staff member accompanying her, took several MSNH residents, including Simon, outside for a smoke break, during which she was again sexually harassed by Simon. Plaintiff reported the harassment via telephone to Zach Collins ("Collins"), MSNH's administrator at the time. Doc. #27, PAGEID #157-58. Collins allegedly instructed Plaintiff not to allow Simon to participate in smoke breaks until his Care Plan could again be changed. Doc. #35, PAGEID #481-82 (citing Doc. #35-1, ¶ 15, PAGEID #500). On or about August 27, 2015, Plaintiff refused to allow Simon to participate in a smoke break, and was verbally

---

[1] Defendants deny that Dunson or anyone else made such a promise, and note that, as a mentally disabled resident, Simon had certain legal rights, including, but not limited to, as much as thirty days' notice prior to eviction. Doc. #28, PAGEID #224-25 (citing Doc. #28-1, ¶ 13, PAGEID #243). Nonetheless, for the purposes of Defendant's motion, the Court must construe all disputed facts in favor of Plaintiff, the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

3

criticized by Myers for doing so, although Myers did not subject Plaintiff to Defendant's progressive discipline policy. Plaintiff informed Myers that Collins had ordered her to prevent Simon from taking such smoke breaks, and that Myers should discuss any problems she had as to that policy with him. Doc. #35-1, ¶ 16, PAGEID #501.

That afternoon, Plaintiff met with Roundtree, Clark, Myers and Patricia Cunningham ("Cunningham"), Defendant's Human Resources Director. Doc. #35-1, ¶ 18, PAGEID #501. During that meeting, Roundtree expressed her displeasure that Plaintiff had gone outside the supposed "chain of command" by calling Collins directly, and intimated that Collins was unhappy, too. Doc. #35, PAGEID #483 (citing Doc. #34, PAGEID #457; Doc. #35-1, ¶ 18, PAGEID #501). Plaintiff suggested that the five of them meet with Collins, since she disagreed with Roundtree and Myers's assertion that Defendant had taken adequate steps to protect her after Simon's harassment. Roundtree instead sent Plaintiff home for the day. *Id.* (citing Doc. #34, PAGEID #460; Doc. #35-1, ¶ 20, PAGEID #501).

The next morning, Plaintiff met with Collins one-on-one and recounted the sexual harassment. Collins indicated that MSNH would change Simon's Care Plan again that day. Doc. #35, PAGEID #483 (citing Doc. #35-1, ¶ 15, PAGEID #501; Doc. 36, PAGEID #539-40). After her meeting with Collins, Clark met with Plaintiff and issued her a written reprimand for insubordination, which Plaintiff refused to sign. *Id.*, PAGEID #484 (citing Doc. #35-1, ¶ 24, PAGEID #502). After Roundtree and Tiffany Bennett ("Bennett"), MSNH's Director of Nursing, joined the meeting, Plaintiff was again sent

4

home for the day, allegedly for raising her voice and using profanities. *Id.*[2] Plaintiff strongly denied raising her voice or using profanities during that meeting or at any other time. Nonetheless, she was terminated, at the direction of Collins, over the telephone by Roundtree and Clark on or about August 28, 2015. Neither Roundtree nor Clark provided a reason for termination. *Id.* (citing Doc. #34, PAGEID #424; Doc. #35-1, ¶¶ 17, 26, PAGEID #501, 502).

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to

---

[2] Roundtree recounts this conversation taking place on August 28, 2015. Doc. #28-3, ¶ 15, PAGEID #254. Even if Roundtree was mistaken, contrary to Plaintiff's argument, Doc. #35, PAGEID #495, being off by one day as to when a conversation took place is not grounds for finding Defendant's proffered, nondiscriminatory reasons "factually baseless."

5

resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings," and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure Civil 3d*, 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*,

6

889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, the court may also consider other properly presented materials in the record. Fed. R. Civ. P. 56(c)(3).

B.  Retaliation Claims under Title VII and Ohio Law

Under both Title VII and Ohio law, it is unlawful for an employer to undertake an adverse employment action against an employee who undertakes a protected action, such as reporting sexual harassment in the work place to one's supervisors. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006); *see also Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.128 (1981) ("we have determined that federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. Chapter 4112"). "As with a Title VII discrimination claim, a Title VII retaliation claim can be established 'either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 538 (6th Cir. 2008)). As Plaintiff has chosen to proffer circumstantial evidence, the Court analyzes her claims under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

> Under *McDonnell Douglas*, Plaintiff bears the initial burden to establish a *prima facie* case of retaliation. If Plaintiff succeeds in making out the elements of a *prima facie* case, the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. If the defendant satisfies its burden of production, the burden shifts back to Plaintiff to demonstrate that Defendants' proffered reason was not the true reason for the employment decision.

*Laster*, 746 F.3d at 730 (internal quotation marks and citations omitted).

7

To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) she engaged in protected activity; (2) Defendant knew of her protected activity; (3) Defendant subsequently undertook a materially adverse action toward Plaintiff; and (4) there was a causal connection between Plaintiff's engagement in protected activity and Defendant's adverse action. *Laster*, 746 F.3d at 730 (internal quotation marks and citation omitted). "Title VII retaliation claims 'must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 360, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013)). Plaintiff must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (internal quotation marks and citations omitted).

If Plaintiff can make such a showing, then the burden shifts to Defendant to articulate "a legitimate, nondiscriminatory reason for the complained of adverse treatment." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (internal quotation marks and citation omitted). To meet its burden, a defendant must designate "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis removed). If Defendant meets this burden, then Plaintiff must show that Defendant's proffered reason is mere pretext for its true discriminatory motives. *Wright*, 455 F.3d at 707. "Pretext can be shown by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated

reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Wheat v. Fifth Third Bank*, 785 F.3d 230, 240 (6th Cir. 2015) (quoting *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014)). "[P]laintiff need only produce enough evidence . . . to rebut, but not to disprove, the defendant's proffered rationale." *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 957 (6th Cir. 2014) (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2013)). However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

### III. ANALYSIS

#### A. Portions of Plaintiff's Affidavit Must Be Stricken

In its reply memorandum, Defendant argues that two portions of the affidavit Plaintiff swore on January 31, 2018, in support of her memorandum *contra* the Motion for Summary Judgment, contradict her statements made during her August 25, 2017, deposition in this case. Specifically, Defendant claims that paragraph eleven of Plaintiff's affidavit, in which she avers that "[d]uring my employment at [MSNH], no MSNH employee ever informed me that it was MSNH's policy to require employees to accompany residents on smoke breaks[,]" was contradicted by her previous deposition testimony that she was aware of the two-employee policy, and that, at her suggestion, Myers implemented a schedule to reinforce the two-employee policy. Doc. #38, PAGEID #608 (citing Doc. #27, PAGEID #135-38; Doc. #35-1, ¶ 11, PAGEID #500). Further, Defendant argues that the following statement in paragraph fourteen of

9

Plaintiff's affidavit—"I informed [Roundtree] that I wanted to speak to Mr. Collins about the most recent harassment and then described the [second incident of sexual] harassment to her. Ms. Roundtree responded to my story by laughing at me"—is contradicted by her testimony that she contacted Collins immediately after the second incident. *Id.*, PAGEID #606 (citing Doc. #27, PAGEID #157-58; Doc. #35-1, ¶ 14, PAGEID #500). Accordingly, Defendant claims, the above statements in Plaintiff's affidavit should be stricken. *Id.*, PAGEID #606, 608 (citing *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003); *Delgado v. Roadco Transp. Servs., Inc.*, 159 F. Supp. 3d 865, 868 (N.D. Ill. 2016)).

The "'sham affidavit' doctrine . . . prevents a party from submitting a new affidavit to manufacture a factual dispute by contradicting . . . earlier testimony." *Webb v. United States*, 789 F.3d 647, 660-61 (6th Cir. 2015) (emphasis removed) (citing *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006)). "If the affidavit directly contradicts prior sworn testimony, it should be stricken 'unless the party opposing summary judgment provides a persuasive justification for the contradiction.'" *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016) (quoting *Aerel*, 448 F.3d at 908).

The Court agrees that the disputed portions of Plaintiff's affidavit are directly contradicted by the cited deposition testimony. Further, Plaintiff has made no effort to address the discrepancies between her affidavit and deposition. As Defendant's argument is well-taken, the Court strikes the entirety of paragraph eleven and the quoted portion of paragraph fourteen from Plaintiff's affidavit; those provisions will not be considered by the Court in adjudicating the Motion for Summary Judgment.

### B. Genuine Issue of Material as to whether Plaintiff can show that she was Terminated in Retaliation for Engaging in Protected Activity

#### 1. Plaintiff has made a *Prima Facie* Retaliation Claim

It is undisputed that Plaintiff's reporting of Simon's sexual harassment to Myers (in July 2015) and Collins (in August 2015) was protected activity, and that Defendant's termination of her was a materially adverse action. Accordingly, Defendant does not appear to dispute that Plaintiff has satisfied the first three elements of a *prima facie* claim. Doc. #28, PAGEID #228-32. However, Defendant argues that there is no "but-for" causal link between Plaintiff's reports of harassment and Defendant's decision to terminate her. In support, Defendant notes that, while temporal proximity is neither a necessary nor sufficient condition to establish but-for causation, more than six weeks elapsed between Plaintiff's first charge of sexual harassment and her termination, rendering Plaintiff's causation theory tenuous. *Id.*, PAGEID #229 (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2006); *Fledderman v. Daiichi Sankyo, Inc.*, 930 F. Supp. 2d 899, 914 (S.D. Ohio 2013) (Barrett, J)). Moreover, Plaintiff's first charge of sexual harassment did not result in any adverse action; indeed, Defendant reinforced the two-employee policy at her behest. *Id.*, PAGEID #231 (citing *Deters v. Rock-Tenn Co., Inc.*, No. 1:04-cv-811, 2006 WL 2711683, at *10-12 (S.D. Ohio Sept. 21, 2006) (Weber, J.), *aff'd on other grounds*, No. 06-4356, 245 F. App'x 516 (6th Cir. 2007)); Doc. #38, PAGEID #608 (citing Doc. #27, PAGEID #135-36, 138). Finally, Defendant argues that "Plaintiff proffers no reason why she was unlawfully retaliated against for the subsequent charge [of sexual harassment] but not the first[,]" *id.*, PAGEID #232, and, consequently, she has failed to make out a *prima facie* case of retaliation.

11

The undisputed evidence shows that the only negative action suffered after the first incident of harassment was Myers's comment that Simon's harassment of Plaintiff was explicable because he was "just a man." Doc. #27, PAGEID #147. However, the similarity between the first and second incidents of harassment could lead a reasonable trier of fact to conclude that Defendant considered both incidents of protected activity in its decisions to undertake adverse employment decisions. In a span of no more than three days, Plaintiff: engaged in protected activity, was disciplined for insubordination, was twice sent home from work early, and was terminated. While, as discussed above, temporal proximity is normally not sufficient to establish but-for causation, it may "constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation." *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 505 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). Moreover, the facts set forth by Plaintiff permit the inference that, but-for engaging in protected activity, the chain of events that led to her termination would have never started. While Defendant argues that Plaintiff was sent home and terminated for repeated violations of smoke break policies and for insubordination, Doc. #28, PAGEID #225 (citations omitted), that argument is material only at the second and third stages of the *McDonnell Douglas* analysis.

Mindful that "[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met," *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), the Court finds that Plaintiff has proffered enough evidence to permit the reasonable inference that, but-for engaging in protected activity, she would not have

been terminated; thus, she has met her *prima facie* burden as to the both incidents of sexual harassment.

### 2. Defendant had Legitimate Non-Discriminatory Reasons for Adverse Actions

Defendant states that the reasons for sending Plaintiff home and ultimately terminating her had nothing to do with her complaints of sexual harassment, but, rather, for insubordination and her repeated violations of its two-employee smoke break policy. Doc. #28-1, ¶ 17, PAGEID #244; Doc. #28-2, ¶ 13, PAGEID #248-49; Doc. #28-3, ¶ 16, PAGEID #254-55. As Plaintiff does not contend that the proffered reasons are facially illegitimate or discriminatory, Defendant has met its burden of production at the second stage of the analysis. Consequently, Plaintiff must show that those legitimate, nondiscriminatory reasons were mere pretext for Defendant's true retaliatory intentions.

### 3. Plaintiff has made a Colorable Showing of Pretext

Plaintiff may show pretext by offering evidence that the employer's stated reason: "(1) has no basis in fact; (2) did not actually motivate the employer; or (3) was insufficient to warrant the adverse action." *Garcia v. DaimlerChrysler Corp.*, No. 08-3844, 320 F. App'x 356, 361 (6th Cir. 2009) (citation omitted).

Plaintiff concedes that written discipline was issued to her, Doc. #35-1, ¶ 24, PAGEID #502, and her recording of her August 27, 2015, meeting with Roundtree shows that Roundtree had surmised and indicated to Plaintiff that Plaintiff had violated Defendant's chain of command and engaged in inappropriate conversations. Specifically, Roundtree claimed that Plaintiff, within earshot of residents, recounted to

coworkers Simon's harassment of her, and Defendant's alleged unwillingness to take any steps to stop the harassment. Doc. #34, PAGEID #450. However, there is no undisputed evidence of a formal, established "chain of command," such that Roundtree was warranted in verbally criticizing Plaintiff for her decision to go directly to Collins. Doc. #35, PAGEID #483 (citing Doc. #35-1, ¶ 18, PAGEID #501). Further, a reasonable trier of fact could credit Plaintiff's explanation, that she "followed the chain of command the first time I was harassed and nothing was done . . . .and that I had been laughed at in response to my complaints[,]" Doc. 35-1, ¶ 18, PAGEID #501, and conclude that Roundtree's decision to criticize Plaintiff—which led to the write-up for insubordination—was unreasonable.

Finally, Plaintiff argues that she never engaged in the profanity and yelling that Defendant alleges led to her being sent home, and ultimately terminated, Doc. #35, PAGEID #494, and there is no undisputed evidence before the Court demonstrating that Plaintiff did, in fact, engage in such profanity and yelling. Taken together, and in the light most favorable to Plaintiff, there are genuine issues of material fact as to: whether Plaintiff actually violated the policies that Defendant claims motivated the adverse actions it took against her; and whether Plaintiff's violations, even if they did occur, were the true motivations for Defendant's adverse actions. Accordingly, for summary judgment purposes, Plaintiff has demonstrated pretext, and thus, met her burden at the third stage of the *McDonnell Douglas* analysis. *Garcia*, 320 F. App'x at 361.[3]

---

[3] Accordingly, the Court need not and will not evaluate whether Defendant's stated reasons were insufficient to warrant the adverse actions taken against Plaintiff. *Garcia*, 320 F. App'x at 361.

14

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, Doc. #28, is OVERRULED. The captioned cause shall proceed to trial.

Date: May 17, 2018

*(signature)*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE